Jr., arguments not to exceed 15 minutes per side. Mr. Dennis Perez, the supervising attorney, along with Lee Crane, law student. You may proceed. Your Honors, I have the honor and privilege of introducing one of our students from the Federal Appellate Litigation Clinic at the University of Michigan Law School. The Court has previously approved his presence here and his argument here. I cede the floor to him. Thank you, Your Honors. Thank you, Mr. Perez. Good morning, Your Honors. May it please the Court. My name is Lee Crane, and I represent the appellant, Terrance Machen Jr. Before I begin, may I reserve three minutes for rebuttal? Sure. Thank you, Your Honor. This case should never have gone to trial. The District Court should have granted Mr. Machen's motion to dismiss for lack of subject matter jurisdiction, should not have submitted the case to a jury, and should have charged the jury to find ratification, this case's jurisdictional element, beyond a reasonable doubt. Is there a case that says it's a jurisdictional element? Ratification specifically? Yeah, that puts it in those terms. The combination of the Maddox case, the Chambers case, and the entire Winship-Allen line, I think, compels that result. Maddox tells us... There's not one case, though, that kind of succinctly holds this is a jurisdictional element. No, it's a very underdeveloped area of law, and I think that's because of the niche circumstances that surround it, the particular age requirements, specifically being between 18 and 19, and the conspiracy that spans maturation. So there are only approximately 40 to 50 cases in the country that have dealt with this issue, and certainly none that I have found after the Allain case, the most recent Supreme Court promulgation on the Apprendi right. So why is it a jurisdictional element, then? If we look to this court's Chambers case, it tells us that 5031 and 5032, the JDA, strip the district court of jurisdiction over violations of federal law. Let me tell you about the Chambers case, because I tried it. Yes, Your Honor. You didn't know this was coming. Judge Ryan sent it back saying we didn't have a hearing about that. Yes, Your Honor. They did have the hearing. When the lawyers walked in to the judge, they said we don't know what Judge Ryan is talking about. He did have the hearing. Yes, Your Honor. So there was a hearing in the Chambers case. Absolutely, Your Honor. I recall that from the Chambers case. And this case is different from that one because the government did not try to get the requisite attorney general certification. It simply alleged that the conspiracy spanned maturation. Why is it jurisdictional? Why don't we just look at it as alleging activities after the date of majority and say, look, I mean, you can only convict based upon activities after the age of majority. Your Honor, I think Apprendi and Alain compelled that kind of reading from a Fifth and Sixth Amendment perspective. I completely agree. But from an Article III perspective, I think there are also jurisdictional issues here from the way Congress phrased the statute in 5032. But if it's alleging, doesn't the indictment include post-majority activity? No, Your Honor. There was no post-majority conduct by Mr. Machin. It does include a post-majority time frame. It does include a time frame. It's a complete offense as it happens for RICO conspiracies. So, yes, Your Honor, it does allege a time frame, but that is insufficient to allege ratification. And the Juvenile Delinquency Act, Section 5031, has to do some work here. There has to be something different from Mr. Machin's case as opposed to adult conspirators. Well, maybe not. I mean, he was an adult conspirator in the government's view, right? And he's not being tried as a juvenile here. The point of our argument here is, Your Honor, after 18, the government must prove a delineation between post-majority and pre-majority conduct. That has to be proven at trial per the Maddox case. And it also must be alleged as an indictment, as something that must be, excuse me, in the indictment as an element that must be convicted. So the difference is not merely alleging a span of time. The government has to delineate between pre- and post-majority conduct at trial, and it must allege the same thing in the indictment. It must make a prima facie case of that element. Okay. So are you saying that they have to, the indictment has to include two events, post-majority? I mean, what does it have to include? So the specific allegation could be Mr. Machin ratified post-18 or continued to participate post-18, and then per the Lanham decision, and citing U.S. v. Harmling, the Supreme Court's decision, it must be accompanied by specific facts and circumstances underlying that offense. So it must have said Mr. Machin ratified after age 18, and it must have shown some sort of Ratified by virtue of participating in his club or gang's activities? Our argument is no, Your Honor. In terms of the indictment allegations, none of that was alleged. All that was alleged was a span of activity before and after. I thought you said in response to Judge White's questioning that you had to show some ratification after he turned 18. Yes, Your Honor. And after he turned 18, the ratification was he continued to participate in gang activities. So the allegation was that he participated throughout the duration of the conspiracy, and that simply is insufficient to show ratification. There must be a delineation between pre- and post-majority conduct, and that must be shown in the indictment. What kind of conduct would it take? It could be something to the effect of, when we look at the other cases, the Maddox case in this circuit is particularly illustrative. The defendant continues to sell drugs in that case, continues to tell people he is selling drugs. He is overtly- Well, in this case, he continued to recruit new members to the club. Your Honor, that's the government's characterization. I don't think the record fully bears out on that, and I think there is contrary evidence to that in the record, to that characterization- We call it question of fact. Well, no, so Your Honor, I think that actually folds into my jury instruction point. And before I address that, I want to mention there is a more recent standard that has come out on the plain error point, that is this Court's decision in United States v. Mack for the plain error position, and that is more recent than the one cited in our brief. But what that case asks this Court to do is look towards the Nieder standard, United States v. Nieder, and ask beyond a reasonable doubt, is this Court certain that the error of not instructing ratification to the jury did not affect the proceeding, did not affect the verdict? The trial counsel asked for an instruction. No, it did not. No, this was not raised on appeal, and I'm certain if this case were to continue, that would be something that would be addressed as a deficiency on that counsel's part. You're raising it on appeal. It just wasn't- I'm raising it on appeal. It's an amazing omission altogether for everyone involved. I agree. The government and the district court do not have clean hands in this, which I think is all the more concerning. I'm not saying that, but it's just a pretty amazing omission. Yes, especially given the fact that it was brought to the Court's attention nine months before trial. And it was, again, the difference between Mr. Machen's guilt and his innocence conviction. But let's say, I mean, let's focus on the jumping in ceremony. Let's say, hypothetically, we think there is enough evidence there for a jury to find not only is this an initiation ceremony, but that Machen knows it. It's not-it's inferential because Royal becomes a member, I guess, 60 seconds after this starts. So why doesn't that evidence make it harmless that the jury wasn't so instructed? So you're asking per the Nieder standard? Yes. I mean, the jury wasn't told you've got to find ratification. Yes. Why shouldn't we say they would have anyway based on that Royal jumping in ceremony? So I think the Nieder standard, as enunciated, has a slightly different focus. And the focus is, are there reasonable doubts on this record that the error affected? So, in other words, is there clear- Even on plain error, are we applying that standard? That's what the MAC Court instructs. It says the third prong of plain error is Nieder. And so what it asks us, is there clear evidence that the jury could have found no ratification? And there is for at least two reasons. The first is the overall context of the gang after June 2008 when Mr. Machen had his last juvenile delinquency proceeding. And we look at, for over-for almost three years, Mr. Machen all but disappears. The agent in charge comes on the scene in July of 2008. There's copious amounts of video of drug buys, and Mr. Machen is never around but for this one afternoon. So that overall context is- It would be evidence that the jury could use to find no ratification, which would satisfy the Nieder standard. The second piece is the testimony that this gang initiation, this jumping in, was new, was not a pattern or practice. It was something that Mr. Machen did not necessarily know whether Mr. Hackett or whether Mr. Royal intended it to be. He did not necessarily know that this was some sort of gang activity. And further, there's corroborating evidence to that effect on page 3904 of the record. Mr. Kern says in 2008 when he joined the gang and when Mr. Machen was a more active member per the juvenile delinquency adjudication in June 2008, Mr. Kern says when he joined, he just showed up. There was no initiation in 2008. That was an innovation in 2010. So those two pieces of evidence, and we can add in the evidence about Mr. Machen's changing family circumstances, they are all evidence from which a jury could have found no ratification, which satisfies the Nieder standard, as enunciated in Mack and as enunciated in that case. I have a question about remedy. Yes, Your Honor. If we accept your jurisdiction argument, what's the remedy? And if we accept your jury instruction argument, what is the remedy? Yes, Your Honor. So the first remedy vis-à-vis the jurisdiction argument would be a dismissal of the indictment, vacating the conviction and dismissing the indictment. And then the government would be free to recharge. Double jeopardy would have not attached. Vis-à-vis the jury instruction, there would also be no double jeopardy attached. It would simply be, again, vacating the conviction and reversing for new trial. Okay. So what you really want to win on is the sufficiency argument. That would be nice because double jeopardy would have attached. But, again, this Court need not go that far. And it seems to me it really doesn't matter about whether it's jurisdiction or a problem with the jury instruction. It's just either way there's going to be a reversal. Yes, correct. It's the same remedy for either, just on different grounds. So, Your Honor, I see my time is running low. If there are none other questions, I'll take my rebuttal. On the jurisdictional thing in the 30 seconds you have. Yes, Your Honor. In the Chambers case, the Court found a certification at the court of appeal stage to be sufficient. The shall not proceed language, you know, I think it would be common to a case with the certification issue or the ratification issue, right? Yes. So doesn't the fact that our Court said certification with your appellate brief is timely, doesn't that undercut your argument that it's a jurisdictional element that has to be in the indictment? No, it doesn't undercut because as Judge Sir Heinrich suggested, the Court erroneously ultimately sent the case back for a hearing because there was more required before that certification would, I see my time is up. May I finish? Yes. Before that certification took effect, they had to send it back for a hearing to see if the adjudication was in the interest of justice. So I don't think it undercuts and I think as Judge White suggested, this is more than jurisdictional from a Fifth and Sixth Amendment perspective and it needed to be alleged in an indictment. All right. Thank you, Your Honor. Thank you. We'll hear from Mr. Ranke. You've got your hands full this morning. Yes. May it please the Court, my name is Dan Ranke. I represent the government in this appeal. Really, the indictment was sufficient when you look at it. There was no question that Mr. Machen was involved in LSP as a juvenile. The indictment alleges a time period from January 1, 2003 through March 15, 2011, which spans, and he became an adult, or he turned 18 in April of 2009, I believe. The indictment is for RICO conspiracy, which alleges that whole time period. The government didn't have to prove or even allege overt acts in the indictment to have a sufficient indictment. Well, that's the question. I will say it's weird because if you had a defendant who's situated just like Machen, who joins the gang before he's 18, does some stuff, then allegedly continues to be a member, at least, of the gang after he's 18. And then you have another guy who joins when he's 18 and then continues his membership through the same date, say, where Machen terminates his. RICO conspiracy. I mean, it's the exact same offense. The second guy at trial and in the indictment, the government doesn't have to say anything about ratification. It doesn't matter. All you have to do is agree to join this conspiracy, right? But for Machen, you have to prove this other element, even though they both did these things as adults. Yes. I mean, do you agree that that's kind of this weird situation you're stuck in? Well, it is. It's a unique situation because he was a juvenile when it started. Kind of hard to understand. He's not a juvenile anymore, and he really isn't a juvenile under the juvenile delinquent. Well, but you wouldn't have to. It would be the same proofs because if they both did the same thing, it would. . . Right. If they're both in the conspiracy, it's the same. They're just proving they're a member of the conspiracy in that same time period. I mean, you know. . . We have an extra proof with Machen, I guess, because we have to show that he did ratify. But only if you want to introduce what he did before, right? I mean, you could have charged him the same way. You could have just charged him starting from his 18th birthday. I think they were trying to show that his whole involvement, because he was a founding. . . Right. In the testimony, he was a founding member. But that's why. That's why you have to ratify it because you wanted to include those things. Right. I believe that's accurate. I guess the bottom line for me is because the law is what it is and his guilt depended upon ratification, and given the facts of this case, how could we possibly permit this conviction to stand when the jury had no idea what their charge was? I mean, the major question they had to answer was whether he ratified, and they had no idea that that was the issue in the case. Well, there was evidence that he did ratify. I mean, there was evidence that he was a continuing member of the gang past his 18th birthday. I know, but the jury. . . But that's not the question. I mean, there was also more evidence about what he did before, and that was really clearly established. So if you're on the jury, it's a real easy thing. You don't even have to bother about what he did as an adult. They're probably sitting there going, why is that such a big issue? He did all this other bad stuff. Obviously, guilty. So how do we permit the conviction to stand when the real issue, which is the meaning of the activity after his birthday, the jury has no idea that that's what the case is about, and they're not even asked to focus on it, and they're not asked whether he ratified. Well, do you get into then kind of the Mac situation that we talked about where is that harmless error given that there was evidence presented, and if they would have been instructed. . . Let's assume a ratification instruction was requested by Macon's counsel. There was evidence that he ratified. It was all inferent. I mean, a lot of it was inferent. I'm sorry. So the fact that there's evidence that he ratified is why they don't get a ruling on sufficiency. But why do you feel that the evidence was so compelling that we can just ignore the fact that the jury wasn't asked the dispositive question? There really didn't. . . It never even came up at trial that he didn't ratify. I mean. . . Because nobody talked about the thing, you know, the whole issue. That's the problem. Well, there was a little testimony from Kearns saying that Macon was a member of the gang at the time of the indictment. His girlfriend. . . Yeah, but that's not enough. You know, Maddox, I read it. . . It's not enough that you fail to withdraw. You have to do, I think it's the First Circuit said, some actus reus. It could even be, I think, it could even be a conversation where he says, I'm in this gang, you know, until I die. I think if somebody said he said that, that's ratification. But we don't have anything but the jumping in. Well, the jumping in is the main piece. Yeah, but, I mean, wouldn't you agree it's fair to say that's not overwhelming evidence of ratification? I think it's pretty good evidence. I mean, whether it was around in 2008, I don't think really matters. I mean, whether they jumped in, Wayne Kearns in 2008, doesn't matter as to whether he ratified his conduct or his involvement in LSP in 2010. If sometime between then they decided we're going to have this initiation where we beat a prospective gang member for 60 seconds and see how he reacts and see how he fights back in order to prove that he's worthy of LSP, that's ratification, whether that was a new development in 2010 or not. So I think, and part of the problem with this case is, you're not going to get gang members to say, well, yes, Terrence Makin sold marijuana on April 30, 2009. It's hard to pin these dates down, which is why I think we put in all the pre- and post-18, tried to put in the pre- and post-18 conduct. Yeah, I mean, I will say, like I said, I mean, it's pretty amazing to me with the clear case law we have and these kind of straddling type cases, juvenile then adult, and given the fact that the defendant filed a motion nine months before trial, saying this shouldn't go forward, I mean, that there was no instruction given here, even though he didn't ask for it. I mean, granted, it's plain error, but it's almost like in a use or carry case they forgot to ask, well, did he use or carry? You know? I mean, it's pretty amazing. And I just, and the evidence is, you know, I understand your point, but it's kind of hard to see how this didn't make a difference. Well, an omitted instruction is also a little different than, an omitted instruction is less prejudicial theoretically than a wrong instruction. Yeah. The fact that the court didn't instruct on this, and given that there was some evidence that he ratified and that he had been a member of this gang from the very beginning and never, you know, you can't withdraw from a conspiracy and he's still in the, he was still in it, and there was evidence that he ratified. Whether it was implication, you know, the evidence was, I admit, there was no, we don't have anything, we have before when he was arrested. You know, if we had after when he was, if he was arrested sometime after that, we wouldn't be here, obviously. I mean, I think if you had an instruction, you'd be on, probably on pretty solid ground here. How many defendants were there? I mean, I know there's 50-something charges. In this trial? It's not like Mr. Mackin was here and, you know, how could you forget it? I mean, there was a lot going on. In this trial there were five. Five? There were five defendants tried at the same time, and it was roughly a two, two-and-a-half-week trial, I think. And how many trials were there? Most everyone else pled. Almost everyone else pled. This was the main trial for all these guys. These were the defendants that chose to go to trial. And they were all consolidated. Really, I'm looking through my notes. I really have hit everything that I need to say. If there's no further questions from the court. No, we appreciate it. You can save your reserves here for all the cases you have to argue. Okay. Thank you, Your Honor. Thank you. Hear from Mr. Crane? Thank you, Your Honor. I just have a couple quick points. First point, just a practical point, I want to say this is not difficult for the government to do. The court should not be concerned with that. In these other cases, there are gang members who testify that after 18, the defendant kept selling drugs, kept, we can see the Wong case. There were, in the Second Circuit, there were actual predicate acts after, in that case, not required here for the RICO conspiracy. But it does happen. It is not as difficult as the government suggests to show after 18, the defendant continues to engage. Second point vis-à-vis the Mack decision, Your Honors, the government suggested that the standard is perhaps closer to a sufficiency, and I want to reaffirm that the standard is beyond a reasonable doubt. Are we sure there's no effect? And is there clear evidence in the record from which the jury could have found no ratification? And I think the answer is yes in this record. And finally, Your Honor, the third point, the Alain Apprendi decisions tell us that when we look at elements, that when we look at crimes, we look at them functionally. So this is not mere RICO. The government, yes, did not have to prove overt acts per 1962D. This is a RICO-spanning majority. So something more needed to be shown with ratification, and the government failed to allege it and failed to instruct it. And for those reasons, Your Honor, we request that this conviction be vacated. Thank you. Very well. Thank you for your argument. Thank you. And Mr. Crane and Mr. Therese, I know you're not here pursuant to the CJA, but we do want to acknowledge the excellent representation and all the time that you put into this. Thank you, Your Honor. Thank you. Case will be submitted. Clerk may call the next case.